IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BONITA J. OWENSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV 2:06 CV796-WKW |
| ) | |
| J.F. INGRAM STATE TECHNICAL ) | |
| COLLEGE; J. DOUGLAS ) | |
| CHAMBERS INDIVIDUALLY ) | |
| AND IN HIS OFFICIAL CAPACTIY ) | |
| AS PRESIDENT OF J.F. INGRAM ) | |
| STATE TECHNICAL COLLEGE; ) | |
| AND JAMES WILSON, ) | |
| INDIVIDUALLY AND IN HIS ) | |
| OFFICIAL CAPACITY AS DEAN ) | |
| OF STUDENTS AND SUPPORT ) | |
| SERVICES AT J.F. INGRAM ) | |
| STATE TECHNICAL COLLEGE, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants J.F. Ingram State Technical College, J. Douglas Chambers, individually and in his official capacity as President of J.F. Ingram State Technical College, and James Wilson, individually and in his official capacity as Dean of Students and Support Services at J.F. Ingram State Technical College and hereby file this reply to the Plaintiff's Response to Defendant's Motion for Summary Judgment. The Plaintiff has failed to produce substantial evidence in opposition to Defendant's Motion for Summary Judgment. The Plaintiff's arguments are neither grounded on substantial evidence, nor based on law or reason. Because the Plaintiff has failed to produce

substantial evidence in opposition to Defendant's Motion for Summary Judgment, Defendants are entitled to judgment as a matter of law.

Ms. Owensby alleges that she was discriminated against at the time she temporarily took over responsibilities in April of 1999 that were formerly associated with the Registrar's Office. This is not evidence of discrimination. The fact that Ms. Owensby retained some of her secretarial duties reflects that it was appropriate for her to remain on the E Salary Schedule, because the E Salary Schedule is for support personnel. In fact, at that time, she had not been designated as the College's "Registrar." An allegation that an employee has her duties and responsibilities somewhat modified, and is given a different title, such as Coordinator of Registration and Admissions and does not receive a pay raise is not necessarily evidence of discrimination, particularly when the employee's duties remain essentially clerical. Even Ms. Owensby acknowledges that President Chambers' redistribution of responsibilities was purely in the best interests of the College. (Owensby depo. pp. 138, 255).

Ms. Owensby alleges that Dean Wilson's recommendation that her title be changed to Administrative Assistant to the Dean of Students constitutes evidence of discrimination. According to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment, around October 1999 and September 18, 2000, Owensby wrote President Chambers concerning her salary. Evidence that an employee is unhappy with her job title or pay-grade is not evidence of discrimination. Merely because Ms. Owensby disagrees with President Chambers' handling of her position, title and salary does not mean that he has intentionally discriminated against her because of her race and gender. Ms. Owensby is asking this Court to find intentional discrimination on the part

2

of President Chambers and Dean Wilson, even though she has not established even the remotest of a nexus between her race or gender and anything that President Chambers or Dean Wilson ever said, did, or failed to do.

Rejection of a recommendation by a subordinate, Dean Wilson, is not necessarily evidence of discrimination by President Chambers, particularly where the Plaintiff has failed to provide any facts even implying that race or gender was a factor in Dr. Chambers' initial denial of Dean Wilson's recommendation, and where the recommendation was ultimately approved when Ms. Owensby was placed on the C Salary Schedule. Merely establishing a long record of complaining about her position and salary schedule does not constitute evidence of discrimination. It is only evidence of an employee who complains about her position despite promotions and raises that have ultimately raised her beginning salary by six hundred (600%) percent.

Ms. Owensby states that she was "seeking adequate compensation for the duties she performed." This is consistent with Ms. Owensby's assertion throughout her deposition testimony that she believes that she has not earned enough money, despite the numerous raises she has received under President Chambers' direction. Again, disagreement over pay is not evidence of discrimination.

Ms. Owensby attempts to assert that her salary is far below others in the system with dual roles and the same titles. However, in her deposition Ms. Owensby acknowledged that she has rarely visited another two-year college and has no idea what Registrars at other two-year colleges do. (Owensby depo. pp. 184-85). She further acknowledged the unique role and mission of J.F. Ingram and that no one else at J.F. Ingram has followed her same job trajectory. (Owensby depo. p. 197). It is therefore

3

misleading and inaccurate to say that her salary is far below others in the system with dual roles and same type titles. Nowhere in the record is there evidence that anyone else in the history of Ingram, or the Alabama College System, has ever had a position with substantially the same duties and responsibilities as Ms. Owensby.

Ms. Owensby attempts to use President Chambers' testimony to set up a comparison between the job responsibilities of Robinson and her own, particularly concerning registrar related duties. This is a false comparison. Mr. Robinson, while Registrar, also taught classes. Ms. Owensby served as Assistant to the Dean of Students, a support staff E Salary Schedule role. Ms. Owensby does not have a four year degree. (Owensby depo. pp. 20-24). Mr. Robinson had a four year degree and a Masters Degree. (Owensby depo. p. 164). Merely because Mr. Robinson had other duties in addition to his Registrar duties and Ms. Owensby had duties, some of which were the same as Mr. Robinson's, as well as her other secretarial duties is not evidence of discrimination or disparate treatment. It is evidence that different people have had different responsibilities at different times in the same college. This simply is not sufficient evidence to create a genuine issue of material fact necessary to survive summary judgment.

Ms. Owensby also attempts to reinforce or support her contention that she has been discriminated against because Mr. Robinson made $67,000.00 when he retired. This factual assertion, while correct, has absolutely no bearing on the issues presented by this case. Mr. Robinson's salary was based on his position and the years that he had served at the College. Should Mr. Robinson have continued to work at J.F. Ingram his salary would have continued to go up. Should he have retired years earlier, his salary would have been less. How Mr. Robinson's final salary when he retired is somehow

4

relevant to any job promotions or pay decisions related to Ms. Owensby is a mystery. There simply is no meaningful connection between Mr. Robinson's final salary and the salary that Ms. Owensby has received since 1999. Thus, when President Chambers was asked why Mr. Robinson's salary and Ms. Owensby's salary are different he said, "I can't answer why she is not where he was. I can only answer where she is now." It was clear to President Chambers, as it should be to this Court, that Mr. Robinson's salary when he retired is completely irrelevant to the issues in this case. Furthermore, even if Mr. Robinson's final salary were a legitimate factor to review (and it clearly is not), the figure to which it would be compared would be Ms. Owensby's final salary; and that figure is not even estimable at this time.

Ms. Owensby continues to assert, after citing a deposition exchange, that Chambers can "give no reason" for Owensby's salary not being the same as the previous Registrar's. Ms. Owensby was not appointed to Registrar when Mr. Robinson resigned. She, by her own admission, only took over some of the duties associated with the former Registrar's position. Further, there are some responsibilities that Mr. Robinson performed that Ms. Owensby has never performed. The logical extension of Ms. Owensby's claim would be that any plaintiff seeking redress in a Federal Court could assert that a redistribution of responsibilities following the retirement of a senior employee and without the promotion to the same title and pay scale would be discrimination. This is an absurd application of Title VII, which would lead to a flood of litigants seeking entitlement to the vacated positions of their superiors. In any employment setting, when the retirement of a senior employee takes place, often redistribution of those responsibilities occurs to lower level employees. Ms. Owensby

seems to assert that it is *per se* discrimination not to immediately elevate her to a position for which she was neither qualified, experienced nor familiar prior to Mr. Robinson's resignation. In fact, Ms. Owensby has continued to receive raises and has been awarded more responsibility, all of which she admits was not a result of any discrimination. As stated in Defendant's Motion for Summary Judgment, if President Chambers had made the Registrar's position open to a competitive process, instead of distributing the duties to other employees, he could have forced Ms. Owensby to compete, and she most likely would never have been appointed to any new positions. The redistribution of these responsibilities and her climb to the C Salary Schedule has been in her favor, not to her detriment.

Ms. Owensby attempts, at pages 9 and 10 of her Brief, to make the argument that President Chambers has overstated his authority in Paragraph 1 of his affidavit. Clearly President Chambers was not asserting in his affidavit that he has no boss or superior. In fact, he states that he is responsible for administrating the institution in accordance with State Board Policies, legal institutional policies, and applicable federal, state and local laws. Nowhere does President Chambers assert in his affidavit that he is not responsible to the Chancellor for the day to day operations of Ingram. Ms. Owensby also conveniently disregards Alabama College System Policy No. 602.01, the last line of which states: "The President is responsible for operating the institution within State Board of Education policy and all applicable state and federal laws," as well as Policy No. 602.01, the second line of which states: "The President of each institution is authorized to make assignments of faculty and staff at the local level." Even though the Chancellor is the chief executive office of the Alabama College System, to imply that the

President of each college does not have broad administrative authority is disingenuous at best.

In Paragraph 6 of his affidavit, President Chambers states that Owensby's promotions have been internal adjustments and promotions made at his discretion. Her appointment as Registrar was approved by the Chancellor, however, President Chambers abdicated his responsibilities because of ongoing litigation to allow the Chancellor to approve this position. This is still at the discretion of President Chambers to allow the Chancellor to step in and handle this promotion. President Chambers' statement in Paragraph 6 is entirely truthful and consistent with Defendant's Motion for Summary Judgment.

In Paragraph 8 of Plaintiff's exceptions to President Chambers' affidavit, she states "being generous does not mean that there has been no discrimination." However, logic dictates that an acknowledgement by an employee that her boss has been generous to her in terms of compensation and promotions certainly comes closer to being evidence of fair (or even favorable) treatment than to being evidence of intentional discrimination against the employee. How would one discriminate against an employee through pay raises and still be considered generous at the same time? These are intellectually inconsistent positions and it would seem that Ms. Owensby is admitting that President Chambers has been generous, not discriminatory.

In Paragraph 9, Ms. Owensby alleges that President Chambers devised a system that Owensby had to go through to receive promotions or salary increases as if this were somehow supportive of her allegations of discrimination. As is clearly stated in Defendant's Motion for Summary Judgment, President Chambers is the President of J.F.

7

Ingram and has the authority to promote employees. It is not discrimination to gradually allow an employee to take on more and more responsibility, change her title and continue to provide her with pay raises. To the contrary, that process is consistent with hiring procedures approved by the U.S. District Court for the Middle District of Alabama in the case of Shuford, et al. v. Alabama State Board of Education, et al., Civil Action No. 89-T-196-N. A Partial Consent Decree approved by the Court on August 11, 1995, as a means of ensuring that *black females* would receive non-discriminatory treatment by two-year colleges, reads in pertinent part:

> "Recognizing that there may occasionally be situations where, for legitimate reasons not related to race or gender, a college may find it necessary and appropriate to expand or otherwise modify an existing position, the college may do so without the position, as modified, being considered a vacancy subject to the provisions of this decree. Examples of such circumstances would include expanding the duties of …[a] resigning employee…to avoid the necessity of hiring an additional employee…"

The Decree goes on to state that the modification may involve a change in title and salary, subject to the approval of the Chancellor. The expansion of Ms. Owensby's duties and increase in her salary was not discrimination; it was promotion. As Ms. Owensby's performance was considered satisfactory, she was given more and more responsibility, her title changed, and she ultimately made more money. This is a natural evolution in any employment setting, not evidence of discrimination. It is inconceivable how Ms. Owensby could assert that the system "President Chambers has devised" has somehow discriminated against her. In fact, President Chambers' system has allowed her to move from an office clerk to a C Salary Schedule position in which she makes over $60,000.00 annually. Furthermore, the Partial Consent Decree cited above, though now terminated, was in effect in 2000, and Ms. Owensby had every right to seek the U.S.

8

District Court's review of the modification of her position, if she thought that it was being carried out in a discriminatory manner. She did not do so.

In Paragraph 11, Ms. Owensby takes issue with Dr. Chambers' statement that it is he who makes the final decision on personnel actions at Ingram. However, the statement that she is apparently attempting to use to show that President Chambers was inconsistent in his deposition testimony about that authority actually shows the consistency of Dr. Chambers' testimony because that statement clearly shows that the supervisor's role is to recommend, not authorize, a pay raise for an employee.

At Paragraph 12, Ms. Owensby states that "the Board prescribed qualifications for positions such as registrar." That statement is misleading. The Court will notice that Ms. Owensby did not quote or cite to any such set of qualifications. That is because there is no such thing. The Board has adopted qualifications for faculty members, but has never adopted qualifications for registrar positions. That function is left up to each college president.

In paragraph 17, Ms. Owensby asserts that the decision to make promotions without a competitive search was the way President Chambers operated Ingram's promotional procedure. This procedure was not only consistent with Court-approved procedures, it <u>benefited</u> Ms. Owensby. Should President Chambers have opened up the position of Registrar to a competitive search, Ms. Owensby may never have become the Registrar.

Ms. Owensby was never misclassified as stated in paragraph 18. The fact that the Chancellor approved her promotion to Schedule C is not evidence of discrimination. She says this happened "several years later." It is left a mystery as to what "several years

later" is referring. If Ms. Owensby is referring to an act or omission that occurred several years prior to her being placed on the C Salary Schedule, then whatever that act or omission is alleged to have been, it would certainly be outside the scope of the two-year statute of limitations prior for a § 1983 claim, and even further removed from the applicable period for an EEOC Charge required for a Title VII claim.

In Paragraph 19, Ms. Owensby states that comparators held similar titles and positions, but not necessarily like duties, but still held the same level of responsibilities. Again, Ms. Owensby admitted in her deposition that her job trajectory has been unique at Ingram and that Ingram is unique among the two-year college system. (Owensby depo. p. 197).

In Paragraph 21, Ms. Owensby again asserts that she filed an internal grievance alleging race and sex discrimination. Ms. Owensby states that she followed procedure. President Chambers also followed procedure and the matter was resolved.

In Paragraph 22, Ms. Owensby seems to assert that President Chambers somehow is admitting to discrimination. This is an egregious mischaracterization of President Chambers' affidavit. President Chambers has never admitted any discrimination and has never intentionally discriminated against any employee including Ms. Owensby.

Ms. Owensby states that the evidence shows that a black female was promoted to a position formerly held by a black male referring to herself and Mr. Robinson. This is an incorrect statement and not reflective of the evidence in the record. Ms. Owensby is a black female who was not promoted to a position formerly held by a black male upon his retirement. Ms. Owensby was not given all of Mr. Robinson's job duties when she was promoted to Coordinator of Registration and Admissions on November 1, 2000. The

10

assertion in her brief that she was given most if not all of his responsibilities is contradicted by her own testimony in deposition and is not supported by testimony of any other witness.

Ms. Owensby asserts that her Title VII claim is valid because she ultimately was appointed Registrar after the retirement of Mr. Robinson. Ms. Owensby was appointed Registrar years after the retirement of Mr. Robinson after she persuaded her superiors that she was capable of taking on more and more responsibility. It is not evidence of discrimination that Ms. Owensby was not immediately given the same title and same pay as a retiring employee. Rather, it is evidence that President Chambers was willing to give Ms. Owensby a <u>chance</u> to prove herself and to handle more responsibility. Once Ms. Owensby was successful and continued to absorb more and more responsibilities, President Chambers continued to promote her. It is preposterous to assert that this is evidence of discrimination against her because of her sex and gender. Ms. Owensby was never treated differently because she was on a lower salary schedule and paid less money than her male predecessor. By her own admission in deposition, her male predecessor had a different job, a different job title, different qualifications, different experience, and different educational credentials.

Ms. Owensby asserts that no one was able to clarify why she was paid less than Mr. Robinson or Ms. Griswold for performing substantially the same job. This is false. It is clear from the record that Ms Owensby was paid according to the position and title that she was given throughout her tenure at Ingram. The record clearly reflects that she has continued to get promotion after promotion and raise after raise. The fact that she did not immediately rise magically to the same position as Mr. Robinson is not evidence of

discrimination. It is evidence that President Chambers redistributed Mr. Robinson's responsibilities in a lawful and thoughtful manner. Even Ms. Owensby acknowledges in her deposition that she believes that the reorganization of the student services department was "for the best interest of the College."

Based on the above and Defendant's Motion for Summary Judgment, the Defendants request that this Honorable Court enter summary judgment in their favor and against plaintiff as to all claims in the plaintiff's Complaint.

/s/ Matthew Y. Beam
Matthew Y. Beam (BEA065)
Andrew W. Christman (CHR024)
Attorney for J. F. Ingram State
Technical College, J. Douglas
Chambers, individually and in
his official capacity as President
of J. F. Ingram State Technical
College and James Wilson,
individually and in his official
capacity as Dean of Students and
Support Services at J.F. Ingram
State Technical College

OF COUNSEL:
Gidiere, Hinton, Herndon
  & Christman
P. O. Box 4190
Montgomery, AL 36103
Telephone: (334) 834-9950
Facsimile: (334) 834-1054

13

CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing was served on the following by placing a copy of same in the United States mail, postage prepaid and properly addressed this 11th day of October, 2007:

Jim L. DeBardelaben
Attorney at Law
1505 Madison Avenue
Montgomery, AL 36107

                                              /s/ Matthew Y. Beam
                                              Of Counsel