IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BONITA J. OWENSBY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:06-cv-0796-WKW [wo] |
| ) | |
| J.F. INGRAM STATE TECHNICAL ) | |
| COLLEGE, *et al.*, ) | |
| ) | |
|    Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This cause is before the court on the defendants' Motion for Summary Judgment. (Doc. # 25.) Bonita J. Owensby ("Owensby"), a black female employed by J.F. Ingram State Technical College ("Ingram"), brings claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964 against Ingram, and a 42 U.S.C. § 1983 claim against Defendant Douglas Chambers ("Chambers") and Defendant James Wilson ("Wilson") for violating her right to be free of race and sex discrimination in her employment. (Compl. ¶¶ 20-26.) For the reasons set forth below, the defendants' summary judgment motion is due to be granted.

### **I. FACTS AND PROCEDURAL HISTORY**

Owensby is a black female who has been employed by Ingram since February 13, 1985. (Defs.' Mot. Summ. J. Br. 7.) She has a two-year degree from a technical college in legal stenography and an Associate's Degree in Arts from a community college, but she does not have a degree from a four-year university. (Owensby Dep. 20:3-21:23.) Since beginning

work as an Office Clerk at an annual salary of $10,272, she has received approximately seventeen salary increases and/or promotions. (*Id.* at 7-9.)  On August 31, 2006, she assumed her current position as Director of Registration and Admissions earning $60,000 annually. (*Id.*) Owensby claims that the point at which she began to be discriminated against was when she advanced from Secretary to Coordinator of Registration and Admissions in October 2000 at an annual salary of $41,047. (Pl.'s Resp. Br. 3; Defs.' Mot. Summ. J. Br. 9.)  In the previous year, she had taken on about 80% of the responsibilities of the former Registrar, Tim Robinson ("Robinson"), after he resigned in April 1999. (Pl.'s Resp. Br. 2.) Robinson's annual salary at the time of his resignation was approximately $67,000.[1] (Defs.' Mot. Summ. J. Br. 14.)  Robinson, a black male, held a master's degree and a teaching certificate. (*Id.* at 15.)  He had been a full-time instructor at Ingram for five years prior to becoming Registrar and continued to teach until his resignation. (Pl.'s Resp. Br. 7.)

After Owensby was promoted to Registrar on September 1, 2005, at an annual salary of $50,379, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 17, 2005.  Owensby filed her Complaint (Doc. # 1) with this court on September 5, 2006.  The defendants filed their summary judgment motion (Doc. # 25) on August 30, 2007, to which Owensby responded (Doc. # 30), and the defendants replied (Doc. # 32).

---

[1] According to Ingram, this salary was based on both Robinson's position *and* his years of service in that position. (Defs.' Reply Br. 4.)  At the time he was first named Registrar, his annual salary was only $32,970 – barely above what he had been making as just an instructor. (Chambers Aff. ¶ 14.)

## II. JURISDICTION AND VENUE

Because this case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."

Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

*A.     Title VII Claim*

The gist of Owensby's claim is that she took on much of the duties of the former Registrar, who was male, but that she did not receive the same pay. (Pl.'s Resp. Br. 6.) In Alabama, unlawful employment practices must be complained of in a timely-filed charge of discrimination to the EEOC within 180 days after the alleged unlawful practice occurred. *Ledbetter v. Goodyear Tire & Rubber Co.*, __ U.S. __, 127 S. Ct. 2162, 2169 (2007) ("[The plaintiff] should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her."). Pay discrimination is a discrete act and a timely EEOC charge must be filed with respect to each alleged violation. *Id.* at 2175. Owensby filed her EEOC charge on November 17, 2005; therefore, any pay

decision that occurred prior to May 21, 2005 is outside of the charging period and cannot provide a basis for holding her employer liable under Title VII. *See id.* at 2172.

Only one pay decision took place during the charging period: her promotion from "Registrar and Assistant to Dean of Students and Support Services" to Registrar on September 1, 2005, with a change in annual salary from $47,527 to $50,379 – an increase of $2,852. (Defs.' Mot. Summ. J. Br. 9.) One of the required elements a plaintiff must establish in order to establish a *prima facie* case of race or sex discrimination under Title VII is that her employer treated similarly situated employees outside her classification more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The employees outside of a plaintiff's protected class who are identified as comparators "must be similarly situated 'in all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (quoting *Holifield*, 115 F.3d at 1562).

As previously stated, Owensby essentially argues that she is not paid as much as the former Registrar. As a male, Robinson is outside of Owensby's protected classification.[2] He was not similarly situated in all relevant respects, however. With his master's degree and teaching certificate, Robinson had a much higher level of education than Owensby, who had two-year college degrees. He also continued to teach during his tenure as Registrar – a task

---

[2] Because Robinson is black, he is not outside of her protected *racial* class. Therefore, even if he were similarly situated to her, Owensby could not establish a *prima facie* claim of discrimination under Title VII based on race by using him as a comparator. To the extent the first count of Owensby's complaint alleges a claim of race discrimination, the defendants' summary judgment motion with respect to race discrimination is due to be granted.

5

Owensby has never done. She also maintained separate duties apart from those of Registrar, but they were of a much different nature than teaching. Owensby's separate duties were to continue performing secretarial services, with about 30% of her time spent in that manner and the other 70% of her time on Registrar-related duties. (Owensby Dep. 84:10-21.) Furthermore, Owensby readily admits that she did not perform the same duties as Robinson and only took over approximately 80% of his duties and responsibilities. (Pl.'s Resp. Br. 12-13.) Therefore, considering the different duties and qualifications between Owensby and Robinson, she cannot establish a *prima facie* case of sex discrimination under Title VII.

Even if Owensby were able to establish a *prima facie* case, the defendants have proffered compelling evidence of changes in the job between Robinson's and Owensby's tenures as Registrar, which provides a legitimate, non-discriminatory reason for the difference in their salaries. Owensby has not shown this reason to be pretextual. When Robinson was the Registrar, Ingram was transitioning from serving only inmates to also serving "free-world" students. (Chambers Aff. ¶¶ 12-13.) This expansion would have increased the diversity of the curriculum and made the position of Registrar more demanding. (*Id.* ¶ 13.) Ingram abandoned its expansion plan after Chambers was appointed president based on a directive from the chancellor of the community college system. (*Id.* ¶ 12.) Without the formerly-anticipated increase in difficulties that would have resulted from the proposed expansion, Chambers determined the Registrar position no longer needed to be a full-time professional position. (*Id.* ¶ 15.) Additionally, the implementation of new software

in 1998 automated many of the functions performed by the Registrar and further reduced the need for a full-time professional. (*Id.* ¶ 16.) Therefore, because Owensby cannot establish a *prima facie* case of sex discrimination under Title VII and has not shown pretext, the summary judgment motion is due to be granted.[3]

B.    **Section 1983 Claims**

Owensby also brings claims under 42 U.S.C. § 1983.[4] These claims are analyzed in the same manner as her Title VII claim because when a plaintiff "predicates liability under Title VII on disparate treatment and also claims liability under [§ 1983], the legal elements of the claims are identical." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). Under her § 1983 claims, Owensby again identifies Robinson as a comparator and additionally claims that Bill Griswold ("Griswold"), a white male who was also a dean's

---

[3] It should also be noted that a study conducted by Ingram found that Owensby's salary was above average when compared to other registrars in the Alabama two-year college system. (Chambers Aff. ¶ 10.)

[4] Because § 1983 is not a source of substantive federal rights, a plaintiff must point to a violation of a specific federal right. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996). The defendants correctly point out that Owensby fails to specify any federal right that Chambers and Wilson allegedly violated. (*See* Compl. ¶¶ 24-26.) Although the Eleventh Circuit employs a heightened pleading standard for § 1983 claims against individuals to whom qualified immunity is available as a defense, *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004), the court will construe Owensby's *pro se* complaint as identifying a Title VII violation as the alleged federal right to have been violated because it is specifically invoked in the complaint. The court will not construe the complaint to allege a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as Owensby appears to argue in her response brief (Pl.'s Resp. Br. 17-18), because nowhere does her complaint allege a violation of this act, which is distinct from Title VII. *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1525-27 (11th Cir. 1992) (explaining the differences between Title VII and Equal Pay Act claims and describing them as "two tools for relief, each of which provides different burdens of proof").

assistant, earned a higher salary than she did. (Pl.'s Resp. Br. 16-19.) For the reasons already set forth above, Robinson is not similarly situated to Owensby and is not an appropriate comparator for the purposes of her sex-based discrimination claim.[5]

Even assuming Owensby is alleging both race discrimination and sex discrimination against Chambers and Wilson using Griswold as a comparator,[6] she cannot establish a *prima facie* discrimination claim of either type. Owensby claims that both she and Griswold were assistants to different deans at Ingram. (*Id.* at 6.) Owensby assisted the Dean of Students, (*id.* at 5), and Griswold assisted the Dean of Instruction. (Chambers Dep. 154:19-22.) Owensby alleges that she was paid less than Griswold, but she does not specify the amount of the disparity. (Pl.'s Resp. Br. 15, 18.) Relying on Chambers's deposition testimony, (Chambers Dep. 157:23-158:5), she primarily argues that because their titles were similar, their pay should have been the same. (Pl.'s Resp. Br. 17.) Chambers acknowledges there was no difference in their titles, but he testified their job duties and responsibilities were

---

[5] The fact that a § 1983 claim does not involve the same statute of limitations as a Title VII claim does not change this result because the only pay decision falling within the applicable two-year statute of limitations, *Stuart v. Jefferson County Dep't of Human Res.*, 152 Fed. Appx. 798, 803 (11th Cir. 2005), is the same one that fell within the EEOC charging period: her promotion to Registrar. (*See* Defs.' Mot. Summ. J. Br. 7-9.)

[6] In a single count of her complaint, Owensby alleges both race and sex discrimination. (Compl. ¶ 24.) In her brief, she again alleges these two types of discrimination and identifies Robinson and Griswold, but does not explain which comparator she is using for which discrimination claim. (Pl.'s Resp. Br. 18.) Although the complaint and brief should have been more specific, *see Davis v. Coca-Cola Bottling Co. Consol.*, __ F.3d __, No. 05-12988, 2008 WL 314962, at *12-14 (11th Cir. Feb. 6, 2008), the court will construe her argument to include Griswold as a comparator for claims of race and sex discrimination. Either way, the analysis and outcome remain the same as Owensby has not established that Griswold was similarly situated.

different.  (Chambers Dep. 158:5-7.)  Owensby also acknowledges this and readily admits her "comparators held similar titles and positions, but not necessarily like duties." (Pl.'s Resp. Br. 13.)  Despite having the burden of establishing Ingram treated Griswold more favorably, Owensby presents no information as to what Griswold's job duties were except to acknowledge they were not similar to hers.  This type of unsubstantiated argument[7] is wholly inadequate to establish a *prima facie* claim of disparate treatment and the defendants' summary judgment motion is due to be granted with respect to the § 1983 claim.[8]

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the defendants' Motion for Summary Judgment (Doc. # 25) is GRANTED as to each and every claim brought by the plaintiff.

---

[7] In addition to failing to even provide a cursory explanation as to what Griswold's job duties were, Owensby also fails to provide citations – let alone pinpoint citations – to support her conclusory statements in the face of a record consisting of hundreds of pages of exhibits.  The court has previously ordered the following in this case:

> In all briefs filed by any party relating to [a summary judgment motion], the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document.  Failure to make such specific reference will result in the evidence not being considered by the Court.

(Doc. # 18, § 2.)  With no explanation or citation to specific supporting facts, Owensby's allegation with respect to Griswold is conclusory and fails to establish a *prima facie* claim of racial discrimination.

[8] Because the plaintiff has failed to establish a constitutional violation, the court finds it unnecessary to analyze Chambers's and Wilson's invocation of qualified immunity as a defense against the plaintiff's claims.

9

An appropriate judgment will be entered.

DONE this 26th day of February, 2008.

                                          /s/  W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).