IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BONITA J. OWENSBY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:06-cv-0796-WKW [wo] |
| ) | |
| J.F. INGRAM STATE TECHNICAL ) | |
| COLLEGE, *et al.*, ) | |
| ) | |
|    Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This cause is before the court on the defendants' Motion to Tax Costs and Award Attorney's Fees (Doc. # 39) filed on March 7, 2008. The plaintiff responded (Doc. # 41) in opposition on March 24, 2008, and the defendants replied (Doc. # 42) on April 7, 2008. For the reasons set forth below, the defendants' Motion to Tax Costs and Award Attorney's Fees (Doc. # 39) is due to be granted in part and denied in part.

### **I. FACTS AND PROCEDURAL HISTORY**

On September 5, 2006, the plaintiff filed a complaint in this court bringing claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964 against J.F. Ingram State Technical College ("Ingram"), and a 42 U.S.C. § 1983 claim against Defendant Douglas Chambers ("Chambers") and Defendant James Wilson ("Wilson") for violating her right to be free of race and sex discrimination in her employment. On February 26, 2008, the court determined the plaintiff had not established any *prima facie* claims and granted the defendants' summary judgment motion as to each and every claim brought by the plaintiff.

(Doc. # 37.) Within ten days, the defendants moved to tax costs and award attorney fees. (Doc. # 39.)

## II. DISCUSSION

Section 1988 governs the award of attorney fees for cases brought pursuant to § 1983: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Supreme Court has found both prevailing plaintiffs and defendants may collect attorney fees under § 1988 but has imposed a more stringent standard on defendants seeking to recover fees. *See Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 421 (1978).[1] For a prevailing defendant to recover attorney fees, the court must find that "[the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422. A defendant is not entitled to attorney fees merely because the plaintiff did not prevail; such a standard "would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of [§ 1983]." *Id.*

While the frivolity determination is made on a case-by-case basis, the Eleventh Circuit has emphasized that the following factors are important: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court

---

[1] While *Christainburg* involved a claim for attorney fees under Title VII, the Supreme Court has indicated that this reasoning also applies to claims for attorney fees under § 1988. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (1985). The Eleventh Circuit has emphasized that "'it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Id.* at 1188 (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978)). A court is likely to find "frivolity" when the court has "decided in the defendant's favor on a motion for summary judgment or a Fed. R. Civ. P. 41(b) motion for involuntary dismissal. In these cases, the plaintiffs did not introduce any evidence to support their claims." *Id.* at 1189.

### A.    Determining Frivolity

The first factor weighs in favor of awarding attorney fees because the plaintiff failed to establish a *prima facie* claim of sex discrimination under Title VII or a *prima facie* claim of discrimination under § 1983. (*See* Doc. # 37.) As for the Title VII claim, the overwhelming majority of the claimed discriminatory pay decisions occurred well outside of the EEOC charging period, which negated the need for any analysis of them. (*Id.* at 5.) In fact, only one pay decision took place during the charging period, and this was a promotion with an annual increase in salary of $2,852. As to this one pay decision, the plaintiff failed to identify any similarly situated comparators. Her one proffered comparator was much more highly educated, continued to teach classes and, as the plaintiff admitted, she did not perform all of the same duties as he had. (*Id.* at 6.) For her § 1983 claims, she

proffered one additional comparator, but he too was not similarly situated because he assisted a different dean, he had different job duties and responsibilities, and there was no evidence presented (or even alleged) as to the amount of the pay difference. (*Id.* at 8.) Furthermore, the plaintiff failed to provide citations to support her conclusory statements and "present[ed] no information as to what [the proffered comparator's] job duties were except to acknowledge they were not similar to hers." (*Id.* at 9.)

The second factor also weighs in favor of awarding attorney fees because the defendants never offered to settle the case. Defense counsel has provided an affidavit to this effect, (Beam Aff. ¶ 20), and the issue has not been disputed by the plaintiff. Finally, the last factor also weighs in favor of awarding attorney fees because the plaintiff's claims were dismissed at the summary judgment stage prior to the need of holding a trial.

Therefore, all three factors weigh in favor of a finding that the plaintiff's claims were frivolous and in favor of awarding attorney fees to the defendants as the prevailing parties. However, now that it has been determined that the plaintiff's claims were frivolous, the next task is to determine the point when they became so.

### B.     *Determining When the Claims Became Frivolous*

On May 29, 2007, during the course of this litigation, the United States Supreme Court issued an opinion that had a major impact on the plaintiff's claims. *See Ledbetter v. Goodyear Tire & Rubber Co.*, __ U.S. __, 127 S. Ct. 2162, 2169 (2007). Its impact is underscored by the defendants' admission that the case "required [defense counsel] to

develop a revised deposition and summary judgment strategy." (Doc. # 42, at 3.) Indeed, the defendants cited the decision in their summary judgment brief, (Doc. # 25-2, at 29-34), and the court relied heavily upon *Ledbetter* in determining that the vast majority of the alleged discriminatory acts were time barred. (Doc. # 37, at 4.) It is also notable that the plaintiff completely failed to rebut the time bar arguments based on the *Ledbetter* decision[2] and failed to even mention the decision in her response brief in opposition to summary judgment. (*See* Doc. # 31.)

As stated above, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, *or that the plaintiff continued to litigate after it clearly became so*." *Christianburg*, 434 U.S. at 422 (emphasis added). Therefore, the question becomes, when did the plaintiff's claims clearly become frivolous? The defendants argue that "[i]t was unreasonable for [the plaintiff] to continue to litigate the vast majority of her claims after [*Ledbetter*] was released." (Doc. # 42, at 2.) The court declines to take this approach for several reasons.

First, it is impractical to expect attorneys to have knowledge of a Supreme Court decision from the exact moment it is released. Obviously, the longer a relevant decision has been released, the greater the expectation for the attorneys to have knowledge of it. Gauging

---

[2] The reason this omission is notable is because it implies the plaintiff had no basis for opposing summary judgment on these grounds. *See Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1423 (11th Cir. 1996) (affirming an award of attorney fees where summary judgment was unopposed by the plaintiff "precisely because they had no basis for doing so, that is, because Plaintiff's claim was not 'meritorious enough to receive careful attention and review'" (quoting *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1559 (11th Cir. 1995)).

how much time should pass before drawing a temporal line in the sand is impossible to do without being somewhat arbitrary. Therefore, rather than picking a day out of the blue for purposes of holding a party accountable for knowledge of a recent decision that changes or clarifies the applicable law, the court finds that in this instance the more appropriate course of action is to measure from the time when the decision was unambiguously brought to the plaintiff's attention: August 30, 2007, the date the defendants filed their summary judgment motion and accompanying brief.

Using the date of the defendants' summary judgment motion is further warranted by the language of the *Christianburg* standard, which contemplates a definitive knowledge of frivolity, *i.e.*, not after it became frivolous, but only after it *clearly* became so. After the defendants filed their summary judgment brief, which presented the plaintiff's employee history in a timeline and contained lengthy arguments that the claims were barred by *Ledbetter*, it was then clear that the plaintiff's claims were frivolous.

Another reason for not finding the plaintiff's claims frivolous from the date when *Ledbetter* was released is that one allegedly discriminatory pay decision did survive the time bar. However, after surviving the time bar trap that caught so many of her other alleged wrongs, the claims based on this sole pay decision quickly withered from the complete lack of a suitable comparator, as made clear in the defendants' summary judgment brief. Therefore, while it is arguable that the plaintiff's claims were frivolous from the outset, there is no doubt in the face of *Ledbetter* – and especially the defendants' summary judgment brief

6

– that the claims were unreasonable and without foundation. For the reasons set forth above, the court finds the plaintiff's claims became clearly frivolous as of the date the defendants' summary judgment brief was filed: August 30, 2007.

C.  *Calculation of Attorney Fees*

Having determined the point in the litigation at which the plaintiff's claims became frivolous, the court must now engage in the familiar "lodestar" method of determining reasonable attorney fees. First, the court must find the "lodestar" by "multiply[ing] the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services." *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). "The court may then adjust the lodestar to reach a more appropriate attorney's fee." *Id.* "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes setting out time expenditures "with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*

The court first examines the hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. Defense counsel billed their clients at a rate of $125 per hour for this case, and the defendants have submitted affidavits that this hourly rate is reasonable for attorneys with similar experience defending

employment discrimination cases in the Montgomery, Alabama area. (Doc. # 42, at 6-7.) Indeed, the affidavits suggest higher fees of between $185 to $225 per hour are reasonable in the area for this type of service. (Weller Aff. ¶ 6; Beam Aff. ¶ 1.) Understandably, the plaintiff has not challenged defense counsel's hourly rate as unreasonable; accordingly, this court, following the practice of other courts in this district, applies the requested hourly rate "for purposes of this fee petition only."[3] *Anderson v. Unum Life Ins. Co. of Am.*, No. 01-894, 2007 WL 604728, at *9 (M.D. Ala. Feb. 22, 2007) (Dement, J.) (internal quotation marks and citation omitted).

Next, the court must determine if the number of hours defense counsel expended was reasonable. The court must exclude those hours that are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Objections and proof from fee opponents" should be "reasonably precise" because "[g]eneralized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight." *Norman*, 836 F.2d at 1301.

Although they ultimately billed their clients a total of 487.6 hours for litigating this case, from the time their summary judgment motion was filed defense counsel only billed their clients 98.7 hours, which is based on the work of two attorneys and two paralegals.

---

[3] Similarly, the plaintiff does not challenge the paralegal rate of $50 per hour, which the court finds to be a reasonable rate for the Montgomery, Alabama area.

(*See* Doc. # 39-3, at 6-18.) As identified by defense counsel,[4] the work performed during this time period falls into three general categories of time related to (1) miscellaneous pleadings, (2) summary judgment, and (3) trial preparation. (*See* Beam Aff. ¶ 12.) Services provided under the category of miscellaneous pleadings included reviewing the amended scheduling order, working on the proposed pretrial order, drafting the bill of costs, and drafting affidavits for the motion to award attorney fees. Services provided under the category of summary judgment included analyzing the plaintiff's response to summary judgment and researching and drafting a reply brief. Services provided under the category of trial preparation included interviewing witnesses, analyzing and assembling documents, analyzing depositions, researching and analyzing jury instructions, analyzing and preparing motions in limine, and preparing general trial strategy. (Beam Aff. ¶ 12.)

The Supreme Court has long recognized that "the 'reasonable attorney's fee' provided for by [§ 1988] should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). However, it is recoverable only so long as the work performed is that in the nature traditionally performed by attorneys and not secretarial in nature. *See id.* at 288 n.10 ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 828 (S.D. Ga. 1988). Here, the two paralegals only claim a total of 3.3 hours. Of that time, 1.7 hours consist of preparing tables of authority, tables

---

[4] Defense counsel provided a courtesy copy of their motion and supporting materials to the court and plaintiff's counsel that color-coded each line entry of their bills by its category.

of content and electronically filing the reply brief. (*See* Doc. # 39-3, at 14.) As such, these hours are purely secretarial in nature and not compensable. This leaves 1.6 hours of compensable paralegal time, divided between the miscellaneous pleading and summary judgment categories, which the court finds to be a reasonable amount.

Andrew Christman, one of the attorneys for the defendants, billed 5.9 hours working on this case during the compensable time period. These hours are broken down further as follows: 1.6 for miscellaneous pleadings, 1.9 for summary judgment, and 2.4 for trial preparation. Given the ninety-eight pages contained in the plaintiff's response brief and its attached exhibits – which turned out to be largely irrelevant after taking into account the time bar – it is not unreasonable for a second attorney to help prepare the reply brief and prepare for the upcoming trial. Christman's 5.9 hours are reasonable under the circumstances.

Matthew Beam, the primary attorney for the defendants, billed a total of 89.5 hours for working on this case during the compensable time period. These hours are broken down further as follows: 5.5 for miscellaneous pleadings, 61.3 for summary judgment, and 22.7 for trial preparation. Much of his work on miscellaneous pleadings is related to preparation of the proposed pretrial order and the motion for attorney fees. The court finds 5.5 hours to be a reasonable amount for these tasks.

Trial was set to commence two months after the reply brief was filed. On October 24, 2007, the court continued the trial to March 24, 2008. The ruling on the defendants' summary judgment motion occurred less than a month before the March trial date.

Therefore, it is reasonable for the parties to have begun trial preparation because at the time they did not know the outcome of the summary judgment motion. The court finds Beam's 22.7 hours of trial preparation are not unreasonable.

The bulk of Beam's hours comes as a result of his heavy involvement in the drafting of the defendants' reply brief. However, 23.9 of his hours in the summary judgment category were lodged *after* the reply brief was filed on October 11, 2007. Because briefing for summary judgment was over and there is no further detail in the billing records, other than typically stating "review and analysis of documents," the court is unable to determine whether these hours are reasonable. As the fee applicant, the defendants bear the burden of demonstrating their claimed hours are reasonable, which they have not done in this instance. Therefore, the court finds that only 37.4 of Beam's summary judgment hours are reasonable, which brings his total amount of reasonable hours to 65.6.

To summarize, the court finds the following hours and rates are reasonable and allowed for the purposes of determining the lodestar:

11

| Name | Hours Claimed[5] | Hours Deducted | Total Hours Allowed | Rate Per Hour | Total Amount |
|---|---|---|---|---|---|
| Paralegals | 3.3 | 1.7 | 1.6 | $50 | $80.00 |
| Beam | 89.5 | 23.9 | 65.6 | $125 | $8,200.00 |
| Christman | 5.9 | 0 | 5.9 | $125 | $737.50 |
| TOTAL | 98.7 | 25.6 | 73.1 | - | **$9,018.00** |

Therefore, as the chart above indicates, the total lodestar amount is $9,018.00. Next, the court must determine if the lodestar should be adjusted. "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302. Here, the results from defense counsel were excellent. Their clients prevailed at the summary judgment stage largely on the basis of defense counsel's briefing. The court finds that no adjustment of the lodestar is necessary and that the defendants are entitled to collect $9,018.00 in attorney fees.

**D.  *Costs***

Local Rule 54.1 provides that a request for costs under Rule 54(d) of the Federal Rules of Civil Procedure "shall be filed with the Clerk within 30 days after entry of final judgment." The defendants filed their bill of costs (Doc. # 39-2) well within the thirty days and the plaintiff has not contested the amounts claimed. Therefore, the motion to tax costs is due to be granted for the total amount of $2,179.43.

---

[5] By hours claimed, the court means all hours claimed after the summary judgment motion was made.

## III. CONCLUSION

While the court is aware of the possible chilling effect this award of attorney fees could have on future civil rights plaintiffs, it cannot ignore the clear language of the statute and the factors set forth by the Eleventh Circuit. The defendants were the prevailing party and all three factors weighed heavily in favor of an award of attorney fees. Therefore, for the reasons set forth above, it is ORDERED that the defendants' Motion to Tax Costs and Award Attorney's Fees (Doc. # 39) is GRANTED in part and DENIED in part as follows:

1. The motion to tax costs is GRANTED and the Clerk of the Court is DIRECTED to tax costs against the plaintiff in the amount of **$2,179.43** in accordance with the defendants' bill of costs (Doc. # 39-2);

2. The defendants are AWARDED **$9,018.00** in attorney fees against Plaintiff Bonita J. Owensby;

3. The motion to award attorney fees is DENIED in all other respects.

DONE this 15th day of July, 2008.

          /s/ W. Keith Watkins
    UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).